837 F.2d 1175
 267 U.S.App.D.C. 172
 Jack O. BLACK and Patrick W. Simmons, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Illinois Central Gulf Railroad Company, The Indiana Rail
Road Company, Intervenors.
Jack O. BLACK, Patrick W. Simmons and Brotherhood of
Locomotive Engineers, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Illinois Central Gulf Railroad Company, The Indiana Rail
Road Company, Intervenors.
 Nos. 86-1136, 87-1184.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 20, 1987.
Decided Feb. 2, 1988.
 
 Gordon P. MacDougall, Washington, D.C., with whom Harold A. Ross, Cleveland, Ohio, was on the brief, for petitioners.
 
 
 1
 Clyde James Hart, Atty., I.C.C., with whom Robert S. Burk, General Counsel, I.C.C., John J. McCarthy, Jr., Deputy Associate General Counsel, I.C.C., Robert J. Wiggers and John J. Powers III, Attys., U.S. Dept. of Justice, were on the brief, for appellees the I.C.C. and United States of America, and Michael Martin, Office of General Counsel, I.C.C., H. Glenn Scammel, Atty., I.C.C., and John P. Fonte, Atty., U.S. Dept. of Justice, Washington, D.C., also entered appearances for joint appellees.
 
 
 2
 Edward D. Greenberg, Lawrence A. Miller, Ronald S. Flagg and Donald H. Smith, Washington, D.C., were on the brief for intervenors-respondents Illinois Central Gulf R.R. and Indiana Rail Road. Richard M. Kamowski and Howard D. Koontz, Chicago, Ill., also entered appearances for intervenor-respondent Illinois Central Gulf R.R.
 
 
 3
 Before WALD, Chief Judge, MIKVA, Circuit Judge, and FRIEDMAN,* Circuit Judge, U.S. Court of Appeals for the Federal Circuit.
 
 
 4
 Opinion for the Court filed by Circuit Judge FRIEDMAN.
 
 FRIEDMAN, Circuit Judge:
 
 5
 These are petitions to review a determination of the Interstate Commerce Commission (Commission) that a railroad's operation of its trains over 13.3 miles of another railroad's line to reach the place at which it interchanged its cars with the other railroad was not an acquisition of trackage rights that required Commission approval. We affirm.
 
 
 6
 * A. Under 49 U.S.C. Sec. 10901 (1982),
 
 
 7
 (a) A rail carrier providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of chapter 105 of this title may--
 
 
 8
 ....
 
 
 9
 (3) acquire or operate an extended or additional railroad line; or
 
 
 10
 (4) provide transportation over, or by means of, an extended or additional railroad line;
 
 
 11
 only if the Commission finds that the present or future public convenience and necessity require or permit the construction or acquisition (or both) and operation of the railroad line.
 
 
 12
 Section 10505 of Title 49 authorizes the Commission to exempt "a transaction" that meets the conditions there specified. Pursuant to that authority, in 1985 the Commission exempted "all acquisitions and operations under section 10901." Class Exemption for the Acquisition and Operation of Rail Lines Under 49 U.S.C. Sec. 10901, 1 I.C.C.2d 810 (1986), rev. denied sub nom. Illinois Commerce Comm'n v. I.C.C., 817 F.2d 145 (D.C.Cir.1987) (Class Exemption); 49 C.F.R. Sec. 1150.32(c) (1986).
 
 
 13
 The Class Exemption requires that, to qualify for an exemption, the "applicant must file a verified notice providing details about the transaction, and a brief caption summary." 49 C.F.R. Sec. 1150.32(a) (1986). The exemption is effective seven days after the notice is filed. Id. Sec. 1150.32(b). Under 49 U.S.C. Sec. 10505(d), the Commission may revoke any exemption upon finding that application of a statutory provision is necessary to carry out the transportation policy set forth in 49 U.S.C. Sec. 10101. Section 1150.32(c) of the Class Exemption provides that "[i]f the notice contains false or misleading information, the exemption is void ab initio." 49 C.F.R. Sec. 1150.32(c).
 
 
 14
 B. In 1987, Indiana Rail Road Company (Indiana R.R.) filed with the Commission, pursuant to the Class Exemption, a notice of its intention to acquire from Illinois Central Gulf Railroad (Illinois Central) the 113-mile line of Illinois Central that ran from Indianapolis to Sullivan, Indiana, where the two lines met.
 
 
 15
 The petitioners (two state legislative directors of a transportation workers union and a different transportation workers union) filed with the Commission a petition to revoke the Class Exemption to the extent it covered the proposed acquisition, "because regulation is necessary to carry out the rail transportation policy for ICG's disposal of its Indianapolis-Sulllivan [sic] line" and because "[r]ailroad employees will be harmed by the proposed transaction." In a supplemental pleading, the petitioners charged that the Class Exemption notice "contains false or misleading information" and therefore was void ab initio. They asserted that, in addition to the purchase by Indiana R.R. of the 113-mile line of Illinois Central, Illinois Central had granted Indiana R.R. trackage rights over 13.3 miles of Illinois Central's line between Sullivan, Indiana, and Palestine, Illinois, where the carriers interchange cars. Their theory apparently was that Indiana R.R.'s failure to disclose the latter arrangement invalidated the notice.
 
 
 16
 Division 1 of the Commission denied the petition to revoke, and the full Commission denied reconsideration. Indiana R.R., No. 30789 (I.C.C. Sept. 23, 1986) (Exemption, Acquisition and Operation) (Division 1); Indiana R.R., No. 30789 (I.C.C. Apr. 7, 1987) (Exemption, Acquisition and Operation) (full Commission).
 
 
 17
 Division 1 held that because Indiana R.R. used Illinois Central's tracks "only for interchange of traffic, its use of the track is not subject to Commission regulation under either Section 10901 or Section 11343," and it therefore rejected the "petitioners' contention that the notice is void." The Division noted that all revenues resulting from the movement of cars over the 13.3 miles of Illinois Central's lines between Sullivan and Palestine was for the account of Illinois Central, and that Palestine was "the first suitable interchange siding." It concluded that this "operation clearly [was] one of interchange between carriers" (emphasis in original). Division 1 further held that regulation of the arrangement was not necessary to carry out the rail transportation policy and that there was no occasion to impose protective labor conditions.
 
 
 18
 In its opinion denying reconsideration, the full Commission affirmed Division 1's ruling that
 
 
 19
 the transaction does not encompass trackage rights. IRRC enters onto ICG track solely for interchange and not for its own account. There is no overhead or bridge traffic to be gained by IRRC on the 13-mile segment, and there are no shippers to be solicited for IRRC's account. IRRC can gain no revenue for the mileage between Sullivan and Palestine, because the tariffs reflect a change of account to ICG at Sullivan. We affirm Division 1's finding that the movement over ICG track is to effect the interchange. [Emphasis in original.]
 
 
 20
 The Commission found that there are no facilities for interchange at Sullivan; and that interchange there would require Illinois Central to back its train from Palestine "crossing 15 public highways and blocking a high speed mainline at Sullivan," that Indiana R.R. would have to back its train across nine public highways, and that the interchange at Sullivan "would have to be performed on a steep incline." The Commission concluded that "[u]nder these circumstances, interchange at Palestine instead of Sullivan is reasonable and meets the statutory obligation for a rail carrier to 'provide proper, reasonable, and equal facilities for the interchange of traffic.' 49 U.S.C. 10742."
 
 The Commission stated:
 
 21
 The principle that allows a carrier to operate over the tracks of another carrier under an interchange agreement, and without Commission approval, is applicable to the 13-mile operation here. Thus, this is a reasonable interchange arrangement requiring no Section 10901 (or 11343) approval. Accordingly, the arrangement does not require any exercise of our exemptive authority.
 
 II
 
 22
 The only contention the petitioners make before this court is that the use by Indiana R.R. of the 13.3 miles of Illinois Central track to effectuate the interchange between the two carriers at Palestine constituted an acquisition of trackage rights over a railroad line, which required specific approval or exemption by the Commission. The petitioners argue that 49 U.S.C. Sec. 10901 and Sec. 11343(a)(6) require such Commission action. Section 10901 permits a railroad to "provide transportation over ... an extended or additional railroad line" only if the Commission finds that public convenience and necessity so require or permit. Section 11343(a)(6) states that "acquisition by a rail carrier of trackage rights over ... a railroad line ... owned or operated by another rail carrier" "may be carried out only with the approval and authorization of the Commission."
 
 
 23
 Division 1 of the Commission held that because Indiana R.R. used Illinois Central's tracks "only for interchange of traffic, its use of the track is not subject to Commission regulation under either Section 10901 or Section 11343." In denying reconsideration, the full Commission similarly ruled that because Indiana R.R.'s use of the track was "solely for interchange and not for its own account" (emphasis in original), Illinois Central "has not granted constructive trackage rights" to Indiana R.R. The Commission characterized the transaction as "a reasonable interchange arrangement requiring no Section 10901 (or 11343) approval."
 
 
 24
 We sustain the Commission's determination that the interchange arrangement in this case did not require Commission approval.
 
 
 25
 Carriers are required to provide "reasonable, proper and equal [interchange] facilities...." 49 U.S.C. Sec. 10742 (1982). The law is well settled that the selection of an interchange point is made by the carriers and that operation over another carrier's line to effect an interchange does not require Commission approval. Southern Ry. v. Louisville & N. R.R., 185 F.Supp. 645, 652 (W.D.Ky.1960), aff'd mem., 289 F.2d 934 (6th Cir.1961). See Kansas City S. Ry. v. Louisiana & N. Ry., 213 I.C.C. 351, 356 (1935); Southern Ry., 317 I.C.C. 557, 583 (1962) (Control--Central of Georgia Ry.). While the preferred point of interchange normally is the intersection of the two carriers' lines, practical considerations may dictate otherwise. New York, C. & St. L. R.R. v. New York Central R.R., 314 I.C.C. 344, 346 (1961). In most cases, interchange necessitates some movement over another railroad's tracks. See id. (movement over eight miles did not require Commission approval).
 
 
 26
 In the present case the Commission ruled that the arrangement for interchange at Palestine involving Indiana R.R.'s use of 13.3 miles of Illinois Central's tracks to reach the interchange point was reasonable and consistent with the requirement in 49 U.S.C. Sec. 10742 that a rail carrier must "provide reasonable, proper and equal facilities for the interchange of traffic." Attempting to interchange at Sullivan (where there were no interchange facilities) would have created serious problems: backing trains up for a significant distance across a number of public highways and performing the actual interchange on a steep incline. Moreover, as the Commission pointed out, Indiana R.R. would gain no revenues for use of Illinois Central's tracks because the traffic was charged to Illinois Central's account.
 
 
 27
 In these circumstances, the Commission justifiably concluded that Indiana R.R.'s use of the 13.3 miles of Illinois Central's track to reach Palestine, which Division 1 found was the first suitable interchange siding, constituted the provision of "reasonable, proper and equal facilities" for interchange that 49 U.S.C. Sec. 10742 requires carriers to provide.
 
 
 28
 "An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress." United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985) (citations omitted). We frequently have applied this principle in reviewing various kinds of orders of the Commission. See, e.g., Regular Common Carrier Conf. v. United States, 803 F.2d 1186, 1195 (D.C.Cir.1986); Lamoille Valley R.R. v. I.C.C., 711 F.2d 295, 307 (D.C.Cir.1983).
 
 
 29
 The Commission's decision in the present case reflects the application of the Commission's expertise in applying a set of detailed and highly technical regulatory provisions to the realities of the railroad industry. We cannot say that the Commission's conclusion that the interchange arrangement in the present case was a reasonable interchange agreement, rather than an acquisition of trackage rights or the provision of transportation over the line of another carrier, was an unreasonable interpretation of the statute the Commission is charged with enforcing, or was in conflict with congressional intent. In these circumstances we uphold the Commission's decision.
 
 
 30
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 291(a)